IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROSALINDA G., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security, <br><br> Defendant. | Case No. 18-cv-3461 <br> Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Rosalinda G.[1] filed this action seeking reversal of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act (the Act). For the reasons stated below, the Court grants Plaintiff's motion for summary judgment [6] and denies the Commissioner's motion for summary judgment [11]. The case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**I. PROCEDURAL HISTORY**

Plaintiff applied for DIB and SSI on October 30, 2013, alleging that she became disabled on May 1, 2011. (R. at 13). The application was denied initially and on reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 156–58). On September 22, 2016, Plaintiff, represented by counsel, testified at a hearing

---

[1] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name.

before an Administrative Law Judge (ALJ). (*Id.* at 32–87). The ALJ also heard testimony from Cheryl Hoiseth, a vocational expert (VE). (*Id.*). The ALJ denied Plaintiff's request for benefits on March 13, 2017. (*Id.* at 13–25). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of May 1, 2011. (*Id.* at 15). At step two, the ALJ found that Plaintiff had severe impairments of degenerative disc disease, spine disorder, and obesity. (*Id.* at 16). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the enumerated listings in the regulations. (*Id.* at 17). The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[2] and determined that Plaintiff has the RFC to perform light work:

> except for frequent climbing of ramps and stairs, but never climbing ladders, ropes or scaffolds. The claimant can occasionally stoop, kneel, crouch, and crawl. The claimant should avoid concentrated exposure to extreme cold and heat defined as less than 32 degrees Fahrenheit and greater than 80 degrees Fahrenheit respectively.

(*Id.* at 18). Based on Plaintiff's RFC and the VE's testimony, the ALJ determined at step four that Plaintiff was able to perform past relevant work as a receptionist. (*Id.* at 24). Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined by the Act, from the alleged onset date of May 1, 2011 through March 13, 2017. (*Id.* at 25). The Appeals Council denied Plaintiff's request for review on March

---

[2] "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008); 20 CFR 404.1545(a).

12, 2018. (*Id*. at 1). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the Social Security Administration (SSA). 42 U.S.C. § 405(g). The Court may not engage in its own analysis of whether the plaintiff is disabled nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). "The ALJ's decision will be upheld if supported by 'substantial evidence,' which means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019) (citations omitted). Substantial evidence "must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citation omitted). In addition, the ALJ must "explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (internal quotations and citation omitted).

The Court accords great deference to the ALJ's determination, but "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (internal quotations and citation omitted). The deferential standard "does not mean that we scour the record for supportive evidence or rack our brains

for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) (citation omitted). "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citation omitted). Reversal and remand may be required "if the ALJ committed an error of law, or if the ALJ based the decision on serious factual mistakes or omissions." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted).

### III. DISCUSSION

In her request for reversal or remand, Plaintiff challenges the ALJ's assessment of (1) Plaintiff's fibromyalgia; (2) her symptoms; (3) the treating physician opinions; and (4) the RFC. The Court agrees with Plaintiff that the ALJ did not properly assess the treating physician opinions in this case.[3] Therefore the Court cannot conclude that substantial evidence supports the ALJ's conclusions about Plaintiff's work-related limitations and his determination that Plaintiff can perform light work with certain additional limitations.

The ALJ's opinion identifies three treating physicians and three state agency doctors. The treating source opinions were provided by Dr. Fahad Mustafa, ("Dr.

---

[3] Because the Court remands on this basis, it need not address Plaintiff's other arguments at this time.

Mustafa"), Dr. John Sunil ("Dr. John"), and Dr. M. Baie ("Dr. Baie").[4] Of the three agency consulting doctors, Dr. Lenore Gonzalez, Dr. Prasad Kareti, and Dr. Albert Osei, only Dr. Osei examined Plaintiff.

**A. Treating Physician Opinions**

Dr. Mustafa provided a medical evaluation report dated March 31, 2014. (R. at 832-35). The ALJ noted that Dr. Mustafa had been treating Plaintiff since February 5, 2014 and saw Plaintiff for leg, thigh, and back pain. (R. at 22). Dr. Mustafa stated that Plaintiff's "wrist, forearm, knees, ankles show abnormalities." (*Id*. at 833). In responding to questions about Plaintiff's capacity during an 8-hour workday, 5 days a week, Dr. Mustafa stated that the following activities would be at more than 50% reduced capacity: walking, bending, standing, stooping, climbing, pushing, and pulling. (*Id*. at 835). Gross manipulation, however, was up to 20% reduced capacity and fine manipulation was full capacity. (*Id*.). The ALJ gave Dr. Mustafa's opinion "little weight." (*Id*. at 23). He reasoned that Dr. Mustafa had a brief treating history with Plaintiff and "other objective medical evidence" did not support the functional limitations noted by Dr. Mustafa. (*Id*.)

Next, the ALJ assessed the July 18, 2014 medical opinion of Dr. John. (*Id*.) Dr. John stated that he had treated Plaintiff since April 2014 and that his specialty was rheumatology. (*Id*. at 636). He opined that Plaintiff would have "good days and bad

---

[4] The Commissioner notes that Dr. John's signature is illegible and suggests that maybe another doctor completed the report, but still stipulates that the opinion was provided by a treating physician. (Dkt. 12 at 7). In addition, although both parties refer to "Dr. Baie", the Court notes that treatment records reflect that doctor's name is "Dr. Mirza Baig." (*see e.g.* R. at 760). For ease of reference however, the Court will use "Dr. Baie" in this opinion.

days" and on the bad days, she would have difficulty sustaining even ordinary activities of daily living and household chores. (*Id.* at 637). He also opined that she would have significant problems in sustaining any type of full time work activity on a full-time 5-day per week schedule. (*Id.*) He noted that in an 8-hour work day, on good days, she could stand/walk for 30 minutes at a time and on bad days, 5 minutes at a time. (*Id.*) As for sitting during an 8-hour work day, she could sit for 1 hour on a good day and 20 minutes on a bad day. (*Id.*) Dr. John also noted that Plaintiff can occasionally carry 2 pounds and frequently carry 1 pound, and may need to lie down intermittently during the day because of her fibromyalgia. (*Id.* at 638). Dr. John observed that Plaintiff had some improvement in bending, pushing/pulling, and grasping, but more objective evaluation by the physical therapist was needed. (*Id.*) Drowsiness and fatigue would further diminish her ability to walk, stand, and sit upright. (*Id.* at 639). Dr. John opined that Plaintiff would have a marked limitation in her ability to complete a normal workday without interruptions from symptoms related to her condition, and would have significant deficiencies in sustained concentration, persistence and pace. (*Id.*). In weighing Dr. John's report, the ALJ explained that "the ultimate finding of disability is reserved for the Commissioner", but otherwise gave Dr. John's opinion "great weight…as to the aspects that are supported by the objective medical evidence." (*Id.* at 23).

Finally, the ALJ assessed the October 2015 opinion of Dr. Baie. (*Id.*). As the ALJ noted, Dr. Baie treated Plaintiff from November 2014 to October 2015. (*Id.*) Dr. Baie's report reflects that he saw her monthly or as needed during that period. (*Id.* at 842).

Dr. Baie noted Plaintiff's joint pain and described the MRI of her back. (*Id*. at 843). He also noted that Plaintiff uses a cane to ambulate. (*Id*). In terms of Plaintiff's capacity during an 8-hour workday, 5 days a week, she had more than 50% reduced capacity in walking, bending, and standing, and sitting, turning and manipulation were 20 to 50% reduced capacity. (*Id*. at 845). Dr. Baie also stated that Plaintiff "cannot lift more than 5 pounds." (*Id*.). The ALJ gave "little weight" to Dr. Baie's opinions because "[t]reatment notes and other objective medical evidence of record does not document that the claimant requires or uses a cane for ambulation." (*Id*. at 23). Further, as to her fibromyalgia, "examination findings have indicated only mild crepitus in the knees with no joint tenderness, therefore the functional limitations opined [by Dr. Baie] are excessive." (*Id*.)

**B. State Agency Doctors**

The ALJ gave "some weight" to state agency doctors Dr. Lenore Gonzalez, M.D. and Dr. Prasad Kareti, M.D., who provided reports in March 2014 and December 2014, respectively. (R. at 22, 92-100, 110-121). Both doctors reviewed the record but did not examine Plaintiff. (*Id*.) Both opined that Plaintiff could perform light work involving occasional stooping, kneeling, crouching and crawling and could frequently climb ramps and stairs but never ladders, ropes or scaffolds due to status-post spine surgery. (*Id*.) The ALJ gave these opinions "some weight" because they were "reasonable at the time and well supported," although the ALJ added the additional limitation about Plaintiff's ability to be exposed to certain temperatures. (*Id*. at 22) Plaintiff had a physical examination by one agency doctor, Dr. Osei, in February

2014. (*Id.* at 616-20). Among other things, Dr. Osei observed that Plaintiff could walk greater than 50 feet without support. (*Id.* at 619). He observed no tenderness or swelling in both the cervical and lumbar spine but "range of motion is reduced with complaint of pain." (*Id.*).[5]

### C. The ALJ Did Not Properly Assess the Treating Physician Opinions

"When treating and consulting physicians present conflicting evidence, the ALJ may decide whom to believe, so long as substantial evidence supports that decision." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). In this case, the ALJ gave the two non-examining doctor opinions "some weight", and two of the three treating source opinions only "little weight." For the third treating doctor, unidentified "aspects" of Dr. John's opinion received "great weight" but the ALJ did not assign any weight to the remaining portions of his opinion.

Because Plaintiff's claim was filed in October 2013 (*see* R. at 88), prior to March 27, 2017, the ALJ must explain the reasons for not assigning controlling weight to the treating physician opinions. *See Kaminski v. Berryhill*, 894 F.3d 870, 874 n.1 (7th Cir. 2018); *see also Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010) ("The applicable regulations guide that decision by identifying several factors that an ALJ must consider."); 20 C.F.R. § 404.1527(c)(2). If the opinion is contradicted by other evidence or is internally inconsistent, the ALJ may discount it but must provide a "sound explanation" for doing so. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

---

[5] The ALJ presumably did not give a weight to Dr. Osei's examination report since he did not provide a medical opinion about Plaintiff's functional limitations. *See* 20 C.F.R. § 404.1527(a)(1).

As provided in the regulations, "[u]nless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion": length of the treatment relationship and the frequency of examination, nature and extent of the treatment relationship, supportability, consistency, specialty, and other factors. 20 CFR 404.1527(c).

Other than noting the dates that the doctors began their treatment relationship with Plaintiff[6] and making general references to consistency with "other objective medical evidence," the ALJ did not discuss any of the regulatory factors. The ALJ failed to note, for example: (1) any of the treating doctor's specialties; (2) Plaintiff's frequency of visits to any of these doctors; (3) the consistencies among the three treating physician opinions about Plaintiff's limitations; and (4) medical evidence in the record that supported their opinions. On the other hand, the analysis the ALJ did provide of these opinions was internally inconsistent and underdeveloped.

First, the ALJ failed to account for any of the three treating doctor's specialties, "as required by 20 C.F.R. § 404.1527(c)(5)." *Burgos v. Saul*, 788 F. App'x 1027, 1031 (7th Cir. 2019).[7] Second, the ALJ did not note Plaintiff's frequency of visits to any of

---

[6] The ALJ noted that at the time of their reports, Dr. Mustafa had treated Plaintiff since February 5, 2014; Dr. John had treated her since April 2014; and Dr. Baie had treated her from November 2014 to October 2015. (R. at 22-23). Although the ALJ did not state it explicitly, this means that Dr. Mustafa had an approximately two-month treatment relationship with Plaintiff; Dr. John an approximately three-and-a-half month treatment relationship; and Dr. Baie, nearly one year.

[7] The Commissioner does not dispute Plaintiff's description of Dr. John and Dr. Baie as being rheumatologists. (Dkts. 7, 12). The parties do not identify Dr. Mustafa's specialty though the record reflects that Dr. Mustafa practiced in family medicine. (R. at 835).

the doctors. Notably, Dr. Baie, the doctor with the longest treatment relationship with Plaintiff, saw her approximately once per month for nearly one year. (R. at 842). The ALJ did not address that fact.

Next, the ALJ failed to discuss the consistencies amongst all three treating source opinions and how that factored into what weight he was giving those opinions. For example, both Dr. Mustafa and Dr. Baie opined that Plaintiff had more than 50 percent reduction in walking, standing, and bending, and 20 to 50 percent reduction in sitting and turning (R. at 835, 845), and Dr. John opined that Plaintiff had good days and bad days, but even on Plaintiff's good days in an 8-hour workday, she could only stand or walk for 30 minutes at a time and sit for one hour (*id*. at 637). Further, although the ALJ broadly referred to the treating physician opinions as being inconsistent with "other objective medical evidence" (R. at 23), the ALJ did not discuss how evidence favorable to Plaintiff factored into his assessment of the treating physician opinions. *See Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018) ("an ALJ may not ignore evidence that undercuts [his] conclusion."). In discounting Dr. Baie's opinion, for example, the ALJ pointed to examination findings of "only mild crepitus in the knees with no joint tenderness." (R. at 23). However, various treatment notes documented joint tenderness—July 2013 treatment notes documented "muscles and joints tender diffusely" (*id*. at 1096) and October 2015 notes documented "multiple tender spots all over" with "reduced range of motion right arm." (*Id*. at 1130). And elsewhere in his opinion, the ALJ acknowledged medical evidence favorable to Plaintiff but did not explain whether or how that medical

evidence supported the treating doctor's opinions about Plaintiff's limitations. For example the ALJ acknowledged that "[o]ther musculoskeletal examinations [] indicated the claimant had decreased range of motion in the cervical and lumbar spine with paraspinal muscle tension along with pain radiating to the right leg." (*Id.* at 22). The ALJ also recognized that consulting doctor Dr. Osei observed that Plaintiff's range of motion in both her cervical and lumbar spine was "reduced with complaint of pain." (*Id.* at 21, 619).

Finally, the assessment the ALJ did provide of the treating physician opinions was internally inconsistent and did not provide enough explanation to allow for meaningful appellate review. The ALJ pointed to the "brief treating history" with Dr. Mustafa as one of two reasons for discounting Dr. Mustafa's opinion. (R. at 23). Dr. Mustafa had an approximately two-month treatment relationship with Plaintiff. By contrast, the ALJ gave "great weight" to portions of Dr. John's opinion, even though Dr. John had treated Plaintiff for only approximately one month longer than Dr. Mustafa. *(Id.)*

As to Dr. John, the ALJ gave "great weight" to portions of his opinion but did not identify which parts received "great weight" or what weight was given to the remaining portions, though it appears the ALJ discounted the rest of Dr. John's opinion. *See Campbell*, 627 F.3d at 308 ("Even if an ALJ gives good reasons for not giving controlling weight to a treating physician's opinion, she has to decide what weight to give that opinion."); *Punzio*, 630 F.3d at 710. The Commissioner explains which portions of the opinion the ALJ gave "great weight" and which portions the

ALJ "did not credit." (Dkt. 12 at 8). However, that is not what the ALJ said. *See Jelinek v. Astrue*, 662 F.3d 805, 811-12 (7th Cir. 2011) (court's review limited to the reasons articulated by the ALJ). In any event, the ALJ needed to provide more explanation. *See David v. Barnhart*, 446 F. Supp. 2d 860, 871 (N.D. Ill. 2006) ("The weight given to a treating physician cannot be implied: the decision must be sufficiently specific to make clear to any subsequent reviewers the weight the ALJ gave to the treating source's medical opinion and the reasons for that weight."). Further, the ALJ's and Commissioner's argument that Dr. John made a "legal determination" (R. at 23, Dkt. 12 at 8) is not convincing. While it is true that the ALJ determines whether a plaintiff's disability qualifies him or her for benefits, "ALJs must consider medical opinions about a patient's ability to work full time because they are relevant to the RFC determination." *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018).

In addition, as to Dr. Baie, the ALJ explained that examination findings of "only mild crepitus in the knees" meant that Dr. Baie's functional limitations opined were "excessive." (R. at 23). In addition to the fact that the ALJ did not specify which functional limitations he believed were "excessive" (and therefore the Court can only assume that it was all of the limitations noted since the ALJ gave Dr. Baie's entire opinion "little weight"), it is not clear how the ALJ made the connection between "only mild crepitus in the knees" and a finding that all functional limitations described by Dr. Baie were "excessive." *See Lambert*, 896 F.3d at 774 ("ALJs must rely on expert

opinions instead of determining the significance of particular medical findings themselves.").[8]

These inconsistencies and gaps in the ALJ's reasoning in discounting the treating physician opinions show that the ALJ did not give "good reasons" for not giving controlling weight to those opinions. *Burgos*, 788 F. App'x at 1030. The Commissioner's reliance on *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013) (Dkt. 12 at 5) is not convincing because in that case, unlike here, it was clear from the ALJ's opinion that the ALJ considered the regulatory factors, despite not explicitly mentioning them, and the ALJ built an "accurate and logical bridge" between the evidence and his conclusion.[9] Moreover, the error in the ALJ's insufficient assessment of the treating source opinions is compounded by the ALJ's decision to give greater weight to the reports of two state agency physicians who never examined Plaintiff. The agency doctor reports in 2014 also pre-dated the more recent report by Dr. Baie, as well as treatment records in 2015 showing medical conditions related to fibromyalgia, multiple tender points and tenderness, and worsening joint pain. (R. at 1130, 1133, 1160-1164).[10]

---

[8] Neither the ALJ nor the Commissioner raised any issue about the form of any of the treating physician's opinions. Even so, the form of the opinion is not necessarily dispositive of the appropriate weight to be given to a treating source. *See Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010).

[9] Similarly, the Commissioner's reliance on footnote 3 in *Henke v. Astrue*, 498 Fed. App'x. 636 (7th Cir. 2012) is not persuasive. As one court in this district explained, "numerous cases have rejected the notion that the factors need not be explicitly considered." *Cukovic v. Colvin*, 2016 U.S. Dist. LEXIS 107738, at *22-23 n.5 (N.D. Ill. Aug. 15, 2016) (collecting cases, including *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014)).

[10] Plaintiff specifically argued that the opinions of the non-examining doctors should not have been considered more reliable than the treating source opinions. (Dkt. 7 at 11).

In this case, the ALJ did not build an accurate and logical bridge from the evidence to his conclusion about Plaintiff's treating physician's opinions. *See Spicher*, 898 F.3d at 757 (an ALJ must "build an accurate and logical bridge from the evidence to her conclusion") (citations and quotations omitted); *see also Scrogham*, 765 F.3d at 698 ("The ALJ here should have addressed these factors [in section 1527(c)] in her opinion to enable us to review whether she engaged in the correct methodology."). "An inadequate evaluation of a treating physician's opinion requires remand." *Cullinan v. Berryhill*, 878 F.3d 598, 605 (7th Cir. 2017). Remand is warranted here. The error was not harmless because the Court cannot be sure that the result of the ALJ's finding as to Plaintiff's disability would have been the same if the ALJ had properly evaluated the treating physician opinions. *See Rockwell v. Saul*, 781 F. App'x 532, 538 (7th Cir. 2019).

Plaintiff requests reversal of the ALJ decision. (Dkt. 7 at 15). To the extent Plaintiff also seeks an award of benefits, both requests are denied. The Court does not believe this case meets the high standard for reversal and an award of benefits. *See Briscoe ex. re. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005) (reversal with an instruction to award benefits only appropriate if "all factual issues have been resolved and the record can yield but one supportable conclusion.").

## IV. CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment [6] is granted and Defendant's Motion for Summary Judgment [11] is denied. Pursuant to sentence four

---

Contrary to the Commissioner's characterization (Dkt. 12 at 5), the Court does not consider that argument waived.

of 42 U.S.C. § 405, the ALJ's decision is reversed, and the case remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: July 22, 2020

_____
MARY M. ROWLAND
United States District Judge